1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

[additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIANN KANTNER, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| CANOPY GROWTH CORPORATION, DAVID KLEIN, JUDY HONG, and MICHAEL LEE, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Christiann Kantner ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, the investigation conducted by Plaintiff's counsel, which

includes without limitation: (a) review and analysis of regulatory filings made by Canopy Growth Corporation ("Canopy Growth" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued and disseminated by Canopy Growth; and (c) review of other publicly available information concerning Canopy Growth.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Canopy Growth securities between June 1, 2021 and May 10, 2023, inclusive (the "Class Period").   Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 ("Exchange Act").

2.     Canopy Growth produces, distributes, and sells a diverse range of cannabis, hemp, and consumer packaged goods ("CPG") products for recreational and medical use.  The Company conducts business through its subsidiaries and a variety of joint ventures, including Tweed, Spectrum Therapeutics, Martha Stewart CBD, and BioSteel Sports Nutrition Inc. ("BioSteel").

3.     BioSteel, a subsidiary of Canopy Growth, is a sports nutrition and hydration brand originally formulated for professional athletes.  Defendants widely touted Canopy Growth's BioSteel business throughout the Class Period, including its purported "meaningful year-over-year gains in BioSteel distribution and sales

2

velocity" and the entry of BioSteel into various partnerships and agreements with star athletes and professional sports organizations.

4.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) issues with Canopy Growth's BioSteel business, including, *inter alia*, aged inventory and overspending, had been significantly hampering the Company's profitability; (ii) there were material weaknesses in the Company's internal controls over accounting and financial reporting; (iii) as a result, the Company improperly booked sales of its BioSteel business unit; (iv) as a result, the Company's revenue was overstated; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

5.    On February 9, 2023, before the market opened, Canopy Growth announced its financial results for the third quarter of the Company's fiscal year 2023.  Among other results, that press release reported third quarter GAAP earnings per share ("EPS") of -C$0.54, missing consensus estimates by C$0.31, and revenue of C$101.2 million, representing a year-over-year decrease of 28.2% and missing consensus estimates by C$15.16 million.  The Company also disclosed new cost-reduction initiatives, including, among other things, "transitioning to an asset-light

3

model", "the organizational restructuring of certain corporate functions," and "significantly reducing the overall size of [the Company's] organization."  In discussing the results, the Company also disclosed that "[g]ross margin in Q3 FY2023 was impacted primarily by [*inter alia*] . . . lower gross margins in the BioSteel business segment primarily attributable to the write-down of aged inventory"; that "the decrease in Sales and Marketing expenses is net of the impact of incremental investments in BioSteel, relating to the activation of the National Hockey League ('NHL') partnership announced in July 2022"; and that "a 7% decrease in [free cash] outflow versus the comparable period in FY2022 . . . [was] partially offset by investments in growth initiatives at BioSteel".

6.     On this news, Canopy Growth's common share price fell $0.47 per share, or 17.15%, to close at $2.27 per share on February 9, 2023.

7.     On May 10, 2023, after the market closed, Canopy Growth announced that its audited consolidated financial statements for the fiscal year ended March 31, 2022 and the quarters ended June 30, 2022, September 30, 2022, and December 31, 2022 should no longer be relied upon, and would need to be restated. The Company also disclosed that it "identified certain trends in the booking of sales by the [BioSteel] business unit for further review."  The Company specified that "although the BioSteel Review remains ongoing, the Company has preliminarily

4

identified material misstatements" and that "the correction of the misstatements is expected to reduce certain revenues previously recognized."

8.     On this news, Canopy Growth's common share price fell $0.18 per share, or 14.8%, to close at $1.04 per share on May 11, 2023, on unusually heavy trading volume.

9.     Then, on May 12, 2023, *BNN Bloomberg* published an article citing former BioSteel employees, who portrayed BioSteel as "a dysfunctional organization rife with overspending."  The article noted, among other issues, that BioSteel's "co-founder John Celenza [was] ousted following a testy exchange with Canopy's Chief Executive Officer David Klein"; that "[s]ources who worked for BioSteel and its partners described the working environment at the company as chaotic and, at times, disorganized"; that "BioSteel's spending plans often clashed with Canopy's need to rein in costs"; and that BioSteel staff cuts were tied to Canopy Growth's February 9, 2023 announcement regarding its transition to an asset-light model.  The article also noted that BioSteel's "sales may have come at a steep cost with costly endorsement deals awarded to a slew of NHL, NFL, MLB, and NBA players," and that "[i]ndustry sources suggested endorsement deals with well-known athletes could start at $100,000, while contracts with professional teams could often be at least triple that amount."

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Pursuant to Canopy Growth's most recent annual report on Form 10-K, as of May 26, 2022, there were 402,858,012 of the Company's common shares outstanding.  Canopy Growth's common shares trade in the U.S. on the Nasdaq Global Select Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in Canopy Growth's common shares located in the U.S., some of whom undoubtedly reside in this Judicial District.

14.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate

6

commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.    Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased Canopy Growth securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.    Defendant Canopy Growth is incorporated under the laws of Canada with its principal executive offices located in Smiths Falls, Ontario.   Canopy Growth's common shares trade in an efficient market on the NASDAQ under the ticker symbol "CGC".

17.    Defendant David Klein ("Klein") has served as Canopy Growth's Chief Executive Officer at all relevant times.

18.    Defendant Judy Hong ("Hong") has served as Canopy Growth's Chief Financial Officer ("CFO") since March 31, 2022.   Hong also served as the Company's Interim CFO from November 18, 2021 until transitioning to the permanent CFO role on March 31, 2022.

19.    Defendant Michael Lee ("Lee") served as Canopy Growth's CFO from before the start of the Class Period to November 18, 2021.

7

20.    Defendants Klein, Hong, and Lee (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

21.    Canopy Growth and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

22.    Canopy Growth produces, distributes, and sells a diverse range of cannabis, hemp, and CPG products for recreational and medical use.  The Company

conducts business through its subsidiaries and a variety of joint ventures, including Tweed, Spectrum Therapeutics, Martha Stewart CBD, and BioSteel.

23.    BioSteel, a subsidiary of Canopy Growth, is a sports nutrition and hydration brand originally formulated for professional athletes.  Defendants widely touted Canopy Growth's BioSteel business throughout the Class Period, including its purported "meaningful year-over-year gains in BioSteel distribution and sales velocity" and the entry of BioSteel into various partnerships and agreements with star athletes and professional sports organizations.

**Materially False and Misleading Statements Issued During the Class Period**[1]

24.    The Class Period begins on June 1, 2021, when Canopy Growth issued a press release during pre-market hours announcing its financial results for the fourth quarter and fiscal year 2021, ended March 31, 2021.  The press release stated, in relevant part, that "BioSteel is gaining momentum in the U.S. market, leveraging the U.S. distribution agreements for its ready–to-drink (RTD) sports beverages"; that "BioSteel RTD beverages are already a top-7 sports drink brand"; and that "[o]ther revenue in Q4 2021 increased 149% year-over-year due primarily to increased BioSteel sales in the U.S. that benefited from expanded distribution."

25.    Also on June 1, 2021, Canopy Growth filed its Form 10-K with the SEC for the fiscal year ended March 31, 2021 (the "2021 10-K").  Therein, the

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

Company stated, in relevant part, that "[g]rowth in our other consumer products . . . . was primarily due to [*inter alia*] . . . growth in our BioSteel business . . . due primarily to the expansion of [its] U.S. distribution network[] in fiscal 2021"; and that "[o]ther revenue was $53.7 million in fiscal 2021, a year-over-year increase of $22.9 million due primarily to BioSteel . . . contributing a full twelve months of revenue contribution in fiscal 2021[.]"

26.    Appended as exhibits to the 2021 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Klein and Lee certified that "[t]he [2021 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that [t]he information contained in th[e 2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.    On August 6, 2021, Canopy Growth issued a press release announcing its financial results for the first quarter of fiscal year 2022, ended June 30, 2021, stating, in relevant part, that "Other Consumer Products brands . . . delivered strong growth driven by [*inter alia*] . . . BioSteel, which grew sales triple digits year-over-year driven by the launch of its RTD beverages"; and that "BioSteel sales in Q1 2022 increased 179% over Q1 2021 driven by the launch of RTD beverages and expanded distribution in the U.S. market."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28.     Also on August 6, 2021, Canopy Growth filed its Form 10-Q with the SEC for the first quarter of fiscal year 2022, ended June 30, 2021 (the "1Q22 10-Q"). Therein, the Company stated, in relevant part:

> Growth in our other consumer products segment . . . was primarily due to [*inter alia*] . . . growth in our BioSteel business. Th[is] increase[] w[as] . . . due primarily to the expansion of our U.S. distribution networks during fiscal 2021.
>
> * * *
>
> Revenue from BioSteel was $6.7 million in the first quarter of fiscal 2022, a year-over-year increase of $4.2 million due primarily to (i) the expansion of our United States distribution network beginning in the fourth quarter of fiscal 2021; (ii) new "ready-to-drink" product launches during the last year; and (iii) the adverse impact on revenue in the first quarter of fiscal 2021 related to COVID-19 related restrictions on retailers.

29.     Appended as exhibits to the 1Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by Defendants Klein and Lee.

30.     On August 17, 2021, BioSteel issued a press release, published on Canopy Growth's website, touting its entry into "a multi-year sponsorship as The Official Sports Drink of the Los Angeles Lakers", which was "the ninth [such sponsorship] in the past year for BioSteel as it continues to expand its U.S. footprint with retailers and distribution partners, in addition to strengthening relationships with some of the most exciting teams, professional athletes and health-conscious consumers across North America."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

31.     On September 2, 2021, BioSteel issued a press release, published on Canopy Growth's website, touting "the signing of Division I quarterback D'Eriq King, making him the brand's first collegiate name, image and likeness (NIL) deal and first college football ambassador", which would purportedly "bring[] the brand's rapidly growing presence to the collegiate level[.]"

32.     On October 20, 2021, BioSteel issued a press release, published on Canopy Growth's website, touting that "it's continuing to fan the flames of its ever-expanding courtside prowess, becoming the Official Sports Drink of the Miami HEAT."  The press release stated, *inter alia*:

> The signing adds to the brand's stacked lineup of partnerships with some of the most historic franchises in basketball, including the Los Angeles Lakers, Brooklyn Nets, Dallas Mavericks, Philadelphia 76ers and Toronto Raptors, and cements its reputation as the hydration drink of choice for teams and trainers looking for a cleaner, healthier hydration option for their players and their communities.

> Beginning with the upcoming 2021-2022 season, the robust, multi-channel partnership will provide BioSteel with a year-round integration of its brand and products on and off the court.

> * * *

> By securing a long-term partnership with one of the most prominent professional sports franchises in the region, BioSteel continues to expand its grip on the sports beverage industry in a key market, where the brand continues to lead the way with local partners like #TeamBioSteel athlete Rodolfo Pizarro and star quarterback D'Eriq King. Fans in the Miami area looking for the same daily hydration support as their favorite athletes can find BioSteel at Target, 7-Eleven and Daily's.

12

33.     On November 5, 2021, Canopy Growth issued a press release announcing its financial results for the second quarter of fiscal year 2022, ended September 30, 2021, stating, in relevant part:

The Company remains optimistic about its growth opportunities in the U.S. for both its BioSteel ready-to-drink ("RTD") beverages and its portfolio of CBD brands. Brand awareness continues to rise, velocity is tracking in-line with expectations and feedback from distributors and retailers has been positive. BioSteel is expected to see its distribution ramp up over the balance of FY2022 and into FY2023 driven by increased listings with national and regional chain accounts.

* * *

BioSteel RTD beverages continued to build distribution throughout Q2 FY2022, with All Commodity Volume ("ACV") increasing to 6.5% in the latest 13-weeks ending October 3, 2021 in IRI. BioSteel has recently secured new distribution with a number of key retailers, and active discussions underway with additional national and regional chain retailers.

* * *

BioSteel sales in Q2 FY2022 increased 47% over Q2 FY2021 driven by the launch of RTD beverages and expanded distribution in the U.S. market.

34.     On November 8, 2021, Canopy Growth filed its Form 10-Q with the SEC for the second quarter of fiscal year 2022, ended September 30, 2021 (the "2Q22 10-Q").  Therein, the Company stated, in relevant part:

Revenue from BioSteel was $7.5 million in the second quarter of fiscal 2022, a year-over-year increase of $2.4 million due primarily to (i) the expansion of our United States distribution network beginning in the fourth quarter of fiscal 2021; (ii) new "ready-to-drink" product launches during the last year; and (iii) the adverse impact on revenue in

the second quarter of fiscal 2021 related to COVID-19 related restrictions on retailers.

35.     Appended as exhibits to the 2Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by Defendants Klein and Lee.

36.     On November 10, 2021, BioSteel issued a press release, published on Canopy Growth's website, touting "its latest collegiate athlete deal with women's basketball freshman phenom Azzi Fudd."  The press release stated, in relevant part:

> Through the landmark partnership, BioSteel takes collegiate NIL (Name, Image and Likeness) deals to the next level of endorsement, with Fudd becoming both a brand ambassador and partner of BioSteel, marking the signing as one of the first partnerships at the college level.
>
> BioSteel continues to lead the way as it expands its growing roster of athlete partners, with Fudd joining the brand's team of other superstar athlete partners that includes Patrick Mahomes, Luka Dončić and Christen Press. With each partnership, BioSteel advances its mission of delivering premium Clean. Healthy. Hydration. to athletes, fans and communities around the world.

37.     On February 9, 2022, Canopy Growth issued a press release announcing its financial results for the third quarter of fiscal year 2022, ended December 31, 2021, stating, in relevant part, that "*[e]ncouraging Q3 FY2022 performance drove sequential revenue growth and record quarterly revenue for BioSteel*" (emphasis in original); and that "BioSteel . . . achieved record quarterly revenue during Q3 FY2022 driven by [the] expanded distribution of BioSteel[.]"

38.     Also on February 9, 2022, Canopy Growth filed its Form 10-Q with the SEC for the third quarter of fiscal year 2022, ended December 31, 2021 (the "3Q22 10-Q").  Therein, the Company stated, in relevant part:

> Revenue from BioSteel was $17.0 million in the third quarter of fiscal 2022, a year-over-year increase of $9.6 million due primarily to (i) the expansion of our United States distribution network beginning in the fourth quarter of fiscal 2021; (ii) new "ready-to-drink" product launches during the last year; and (iii) higher international sales of ready-to-drink products and beverage mixes.

39.     Appended as exhibits to the 3Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by Defendants Klein and Hong.

40.     On March 29, 2022, BioSteel issued a press release, published on Canopy Growth's website, touting "its latest athlete partnership with Sergiño Dest, defender for the U.S. Men's National Soccer Team (USMNT)" who "joins the brand's team of elite athlete ambassadors that includes fellow soccer star Christen Press, as well as Patrick Mahomes and Luka Dončić", while touting that "he will amplify the brand's lineup of zero-sugar hydration products to his community and fans across the globe."

41.     On May 27, 2022, Canopy Growth issued a press release announcing its financial results for the fourth quarter and fiscal year 2022, ended March 31, 2022, stating, in relevant part:

Increased distribution of BioSteel hydration products drove year-over-year revenue growth in FY2022 of 56% versus FY2021. Focusing strategic investments to accelerating brand growth with aspiration to be top 4 player in the North American sports drink market.

\* \* \*

"Achieving profitability is critical and we have undertaken additional initiatives to streamline and drive efficiencies for our global cannabis business.  In FY2023, we are focused on executing our path to profitability in Canada, while we continue to invest in high potential opportunities – particularly in BioSteel, and further developing our U.S. THC ecosystem, which we believe remains significantly under-appreciated by the market."- [Defendant] Hong, Chief Financial Officer

42.    On May 31, 2022, Canopy Growth filed its Form 10-K with the SEC for the fiscal year ended March 31, 2022 (the "2022 10-K").  Therein, the Company stated, in relevant part:

Net revenue was $520.3 million in fiscal 2022, as compared to $546.6 million in fiscal 2021. The year-over-year decrease is attributable to a revenue decline of 11% in our global cannabis segment, as declines across our organic Canadian recreational and medical cannabis businesses were only partially offset by net revenue attributable to the acquisitions, in the first quarter of fiscal 2022, of Supreme Cannabis and Ace Valley. ***The revenue decline in this segment was only partially offset by growth of 9% in our other consumer products segment, which was primarily driven by the growth in our BioSteel business.***

\* \* \*

***Revenue from BioSteel was $44.6 million***, a year-over-year increase of $16.1 million due primarily to (i) the expansion of our United States distribution network beginning in the fourth quarter of fiscal 2021; (ii) new "ready-to-drink" product launches during the last year; and (iii) higher international sales of ready-to-drink products and beverages mixes.

16

43.     The 2022 10-K also stated that "management has determined that our internal control over financial reporting as of March 31, 2022, was effective."

44.     Appended as exhibits to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by Defendants Klein and Hong.

45.     On July 7, 2022, BioSteel issued a press release with the National Hockey League ("NHL") and the National Hockey League Players' Association ("NHLPA"), published on Canopy Growth's website, touting "a new multi-year partnership naming BioSteel the Official Hydration Partner of the NHL and the NHLPA."  The press release stated, *inter alia*:

> The milestone partnership will debut during the 2022 NHL Draft in Montreal, where BioSteel is a presenting sponsor of national coverage across Rogers Sportsnet in Canada. The new partnership will provide the BioSteel brand with League-wide rinkside marketing and product supply rights, retail activation rights, community engagement platforms, player marketing and activation rights and more. This marks the sports hydration company's first partnership with a League as it continues to bring Clean. Healthy. Hydration. to communities, athletes and fans across North America.

46.     On July 18, 2022, BioSteel issued a press release, published on Canopy Growth's website, touting "an all-star addition to #TeamBioSteel with the signing of Alek Manoah, pitcher for the Toronto Blue Jays" who "will be promoting BioSteel through events, social media, trade marketing, and more as he continues

to support his daily hydration routine with the brand's lineup of zero sugar sports drinks."

47.     On August 5, 2022, Canopy Growth issued a press release announcing its financial results for the first quarter of fiscal year 2023, ended June 30, 2022, in which it listed the following highlights:

- Q1 FY2023 net revenue was flat compared to Q4 FY20221.

- Company maintained #1 share of combined premium flower and pre-rolled joint ("PRJ") segment in Q1 FY20232.

- Increased share of the combined mainstream flower and PRJ segment by 35 bps to 4.0% in Q1 FY2023.

- International medical cannabis net revenue approximately doubled versus Q1 FY2022 driven primarily by strong sales in Israel and Australia.

- ***Record BioSteel revenues in Q1 FY2023 increased 169% versus Q1 FY2022. Secured retail agreement with Walmart Stores covering 2,200 stores in 39 states. Entered partnership to become the Official Hydration Partner of the NHL and NHLPA.***

- Cost reduction program on track with operating expenses[] in Q1 FY2023 decreasing by 13% versus Q1 FY2022.

* * *

Net revenue of $110 million in Q1 FY2023 declined 19% versus Q1 FY2022. Total global cannabis net revenue of $66 million in Q1 FY2023 represented a decline of 29% over Q1 FY2022 driven in part by a decline in value flower sales in the Canadian recreational cannabis market due to a deliberate business transition to focus on higher margin, premium and mainstream products. Other consumer products revenue of $44 million in Q1 FY2023, represented an increase of 1% over Q1

FY2022. Excluding the impact from acquired businesses and divestiture of C3, net revenue declined 17% and global cannabis net revenue declined 28% versus Q1 FY2022.

48.    On August 8, 2022, BioSteel issued a press release, published on Canopy Growth's website, touting "the latest addition to #TeamBioSteel with the signing of Connor Bedard, an elite rising hockey star and top prospect for the 2023 NHL Draft" who "intends to promote BioSteel through events, social media, trade marketing, and more as he supports his daily hydration routine with the brand's lineup of zero sugar sports drinks."

49.    On August 9, 2022, Canopy Growth filed its Form 10-Q with the SEC for the first quarter of fiscal year 2023, ended June 30, 2022 (the "1Q23 10-Q"). Therein, the Company stated, in relevant part:

> Net revenue was $110.1 million in the first quarter of fiscal 2023, as compared to $136.2 million in the first quarter of fiscal 2022. The year-over-year decrease is attributable to a revenue decline of 29% in our global cannabis segment, which was primarily due to a decline in our organic Canadian recreational business and the divestiture of all of our interest in C3 Cannabinoid Compound Company GmbH ("C3") in the fourth quarter of fiscal 2022. Revenue in our other consumer products segment grew 1% relative to the first quarter of fiscal 2022, as growth in our BioSteel business was largely offset by declines in our Storz & Bickel and This Works businesses.
>
> * * *
>
> **Revenue from BioSteel was $17.9 million in the first quarter of fiscal 2023, a year-over-year increase of $11.2 million due primarily to (i) continued growth in our distribution channels and sales velocities across North America; and (ii) higher international sales of ready-to-drink products and beverage mixes.**

19

50.    In addition, the 1Q23 10-Q stated the following regarding the Company's internal controls:

> There have been no changes in our "internal control over financial reporting" (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this Quarterly Report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

51.    Appended as exhibits to the 1Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by Defendants Klein and Hong.

52.    On September 1, 2022, BioSteel issued a press release, published on Canopy Growth's website, "announc[ing] the release of Blue Cherry, a new limited-edition sports drink that celebrates the brand's partnership with the Toronto Blue Jays."  The press release touted, *inter alia*, that "[t]he new ready-to-drink offering is co-branded with the Blue Jays logo and will be available at Sobeys banner stores, including Needs, Boni-Soir, Voisin, and IGA Quebec, across Atlantic Canada and Quebec now through the end of the season"; that "[a]s a sponsor of the Toronto Blue Jays for the 2022 season, BioSteel is the exclusive sports drink product in the Blue Jays home and away dugouts and bullpens"; and that "[t]he brand is also prominently featured throughout Rogers Centre via digital concourse signage and sampling events."

53.     On September 8, 2022, BioSteel issued a press release, published on Canopy Growth's website, touting "the latest addition to #TeamBioSteel with the signing of Ja'Marr Chase, one of the league's top wide receivers" who "will be promoting BioSteel through social media, trade marketing, events, including in the Cincinnati area, and more."

54.     On September 26, 2022, BioSteel issued a press release, published on Canopy Growth's website, touting "the signing of international soccer star Alphonso Davies to its growing team of athlete partners" who "intends to promote the brand's lineup of zero-sugar hydration products to his global fan base via brand appearances and on social media" and who "[f]ans can also expect to see . . . on limited-edition BioSteel products and point-of-sale assets at retailers in both Canada and Germany, where he plays for his world-renowned club team."

55.     On November 1, 2022, BioSteel issued a press release, published on Canopy Growth's website, touting the "signing [of] Laila Edwards, Sarah Fillier, Calla Frank, and Jade Iginla, four elite hockey players who play on their respective national teams", and stating, *inter alia*:

> The four new #TeamBioSteel athletes intend to promote the brand at events and on social media, where they will show how they incorporate BioSteel sports drinks into their daily hydration routines. As the popularity of women's sports surges across the globe, the new signings will position the brand as the hydration drink of choice to women's hockey's growing audience, and BioSteel will reach new fans who represent the next generation as the brand continues to grow in North America and around the globe.

21

The athletes join #TeamBioSteel as the brand's inaugural season as Official Hydration Partner of the National Hockey League® gets underway. As a part of their first pieces of content with the brand, both Iginla and Frank star in the Canadian and U.S. versions, respectively, of a new BioSteel commercial that will run during NHL games this season and celebrates how BioSteel hydrates the next generation through hockey.

56.     On November 9, 2022, Canopy Growth issued a press release announcing its financial results for the second quarter of fiscal year 2023, ended September 30, 2022, in which it listed the following highlights:

- Delivered net revenue growth of 7% in Q2 FY2023 relative to Q1 FY2023, despite the continued impacts of macroeconomic headwinds and evolving Canadian cannabis market dynamics.

- ***Achieved 299% net revenue increase for BioSteel as compared to the prior year, driven by increased investment. Acquired manufacturing facility subsequent to quarter end, which is expected to support ongoing rapid U.S. expansion for the brand and drive gross margin improvement.***

* * *

Net revenue of $118 million in Q2 FY2023 declined 10% versus Q2 FY2022. The decrease is primarily attributable to increased competition in the Canadian adult-use cannabis market, the divestiture of C3 Cannabinoid Compound Company GmbH ("C3"), and softer performance from This Works, offset by revenue growth at BioSteel. Excluding the impact from the divestiture of C3, net revenue declined 1% versus Q2 FY2022. When adjusting for both the impact of C3 and the ongoing divestiture of our Canadian retail business, revenues for the period increased 2% versus Q2 FY2022. Net revenue increased 7% in Q2 FY2023 relative to Q1 FY2023, despite the continued impacts of macroeconomic headwinds and evolving Canadian cannabis market dynamics.

57. Also on November 9, 2022, Canopy Growth filed its Form 10-Q with the SEC for the quarter ended September 30, 2022 (the "2Q23 10-Q"). Therein, the Company detailed the following about its net revenue:

> Net revenue was $117.9 million in the second quarter of fiscal 2023, as compared to $131.4 million in the second quarter of fiscal 2022. The year-over-year decrease is primarily attributable to: (i) the continuing decrease in net revenue from our Canada cannabis segment, as increased competition in the Canadian recreational market has resulted in lower sales velocities, continued price compression and reduced traffic at our corporate-owned retail stores; (ii) the divestiture of all of our interest in C3 Cannabinoid Compound Company GmbH ("C3") in the fourth quarter of fiscal 2022; and (iii) softer performance in our This Works business. These declines were partially offset by continued growth in our BioSteel business resulting from the continued expansion of our distribution and retail channels, and strong international sales growth.

> \* \* \*

> BioSteel

> Revenue from BioSteel was $29.9 million in the second quarter of fiscal 2023, as compared to $7.5 million in the second quarter of fiscal 2022. The year-over-year increase is primarily attributable to: (i) continued growth in our distribution and retail channels, which resulted in increased sales velocities across North America; and (ii) strong international sales growth. All of BioSteel's major product lines contributed to the year-over-year revenue growth.

58. In addition, the 2Q23 10-Q contained the same statements as referenced in ¶ 50, *supra*, regarding the Company's internal controls.

59. Appended as exhibits to the 2Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by Defendants Klein and Hong.

60. On December 12, 2022, BioSteel issued a press release, published on Canopy Growth's website, touting "a new partnership naming BioSteel the exclusive hydration partner for F45 fitness studios globally." The press release stated, *inter alia*:

> BioSteel branding as well as BioSteel sports hydration drinks in various flavors will be featured in all F45 studios and at special events, including F45 Track events and new studio grand openings, as well as F45's digital and social channels. F45 members will also be able to sample and purchase a range of BioSteel sports drinks in-studio, where trainers will share the importance of hydration during workouts.

61. On January 11, 2023, BioSteel issued a press release, published on Canopy Growth's website, touting "a series of multi-year partnerships that expand its growing presence in the [NHL] and name the brand the new Official Sports Hydration Partner of six franchises: the Anaheim Ducks, Carolina Hurricanes, Chicago Blackhawks, Columbus Blue Jackets, Pittsburgh Penguins and Tampa Bay Lightning." The press release stated, *inter alia*:

> Each team is hosting tailored activations this season to enhance and spotlight the brand's mission of delivering premium hydration to athletes and consumers around the globe. Activations include BioSteel trigger promotions and point-of-sale displays at local retailers, sampling opportunities, in-arena branding, social media promotions and more. Trigger promotion opportunities include tailored activations to align with BioSteel sports hydration drink product attributes, such as zero sugar and five essential electrolytes, with exact details and availability varying by market.
>
> Earlier this year, BioSteel became the Official Hydration Partner of the NHL and the [NHLPA] in a full circle moment for a brand born in an NHL locker room. Through the League deal, BioSteel secured rinkside

marketing and product supply rights for all benches and locker rooms, the right to use NHL logos, marks and teams at the national level, as well as player marketing and activation rights through the NHLPA. With these six new franchise sponsorships, BioSteel enhances its marketing activation rights in each corresponding local market, including through the use of the individual teams' logos on point-of-sale displays at local retailers and additional touch points for fans in the arenas and surrounding communities.

62. The above statements identified in ¶¶ 24-61 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) issues with Canopy Growth's BioSteel business, including, *inter alia*, aged inventory and overspending, had been significantly hampering the Company's profitability; (ii) there were material weaknesses in the Company's internal controls over accounting and financial reporting; (iii) as a result, the Company improperly booked sales of its BioSteel business unit; (iv) as a result, the Company's revenue was overstated; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

63. On February 9, 2023, before the market opened, Canopy Growth announced its financial results for the third quarter of fiscal year 2023, ended December 31, 2022 (the "3Q23 Press Release"). Among other results, the press release reported third quarter GAAP EPS of -C$0.54, missing consensus estimates

by C$0.31, and revenue of C$101.2 million, representing a year-over-year decrease of 28.2% and missing consensus estimates by C$15.16 million. The Company also disclosed new cost-reduction initiatives, including, among other things, "transitioning to an asset-light model", "the organizational restructuring of certain corporate functions," and "significantly reducing the overall size of [the Company's] organization." In discussing the results, the Company also disclosed that "[g]ross margin in Q3 FY2023 was impacted primarily by [*inter alia*] . . . lower gross margins in the BioSteel business segment primarily attributable to the write-down of aged inventory"; that "the decrease in Sales and Marketing expenses is net of the impact of incremental investments in BioSteel, relating to the activation of the [NHL] partnership announced in July 2022"; and that "a 7% decrease in [free cash] outflow versus the comparable period in FY2022 . . . [was] partially offset by investments in growth initiatives at BioSteel".

64. On this news, Canopy Growth's common share price fell $0.47 per share, or 17.15%, to close at $2.27 per share on February 9, 2023. Despite this decline in the Company's share price, Canopy Growth securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions concerning issues with the BioSteel business, including, *inter alia*, overspending, material weaknesses in the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company's internal controls over accounting and financial reporting with respect to booked sales of the BioSteel business unit, and overstated revenue.

65.    For example, the 3Q23 Press Release stated, in relevant part:

Net revenue of $101 million in Q3 FY2023 declined 28% versus Q3 FY2022. The decrease is primarily attributable to increased competition in the Canadian adult-use cannabis market, the divestiture of C3 Cannabinoid Compound Company GmbH ("C3"), a decline in our U.S. CBD business, and softer performance from Storz & Bickel and This Works. When adjusting for both the impact of the divestiture of C3 and our Canadian retail business, revenues for the period decreased 23% in Q3 FY2023 versus Q3 FY2022.

66.    Also on February 9, 2023, Canopy Growth filed its Form 10-Q with the SEC for the quarter ended December 31, 2022 (the "3Q23 10-Q"). Therein, the Company stated, in relevant part:

Net revenue was $101.2 million in the third quarter of fiscal 2023, as compared to $141.0 million in the third quarter of fiscal 2022. The year-over-year decrease is primarily attributable to: (i) the continuing decrease in net revenue from our Canada cannabis segment, as increased competition in the Canadian adult-use market has resulted in lower sales velocities and continued price compression; (ii) the divestiture of our interest in C3 Cannabinoid Compound Company GmbH ("C3") in the fourth quarter of fiscal 2022; (iii) a decline in our U.S. CBD business, as we focused our product and brand portfolio; and (iv) softer performance in our Storz & Bickel and This Works businesses.

* * *

BioSteel

Revenue from BioSteel was $16.4 million in the third quarter of fiscal 2023, as compared to $17.0 million in the third quarter of fiscal 2022.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The year-over-year decrease is primarily attributable to timing shifts in the distribution and sales of our products into our key markets.

67. In addition, the 3Q23 10-Q contained the same statements as referenced in ¶ 50, *supra*, regarding the Company's internal controls.

68. Appended as exhibits to the 3Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 26, *supra*, signed by Defendants Klein and Hong.

69. On April 13, 2023, BioSteel issued a press release, published on Canopy Growth's website,  touting "the signing of Sophia Smith, forward for the U.S. Women's National Soccer Team (USWNT) and 2022 BioSteel U.S. Soccer Female Player of the Year."  The press release stated, *inter alia*:

> BioSteel is also an official sponsor of U.S. Soccer, meaning Smith, her teammates and other players across the Federation hydrate with BioSteel on the sidelines during National Team matches, in the locker rooms and in training camp facilities.

> Through the partnership, Smith will continue to hydrate with BioSteel in preparation for the international stage this summer, and she will promote the brand's lineup of Clean. Healthy. Hydration.™ products to her fans around the globe via social media, trade marketing and events.

70. The above statements identified in ¶¶ 65-69 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) issues with Canopy Growth's BioSteel business, including, *inter alia*, aged inventory and overspending, had been significantly hampering the

Company's profitability; (ii) there were material weaknesses in the Company's internal controls over accounting and financial reporting; (iii) as a result, the Company improperly booked sales of its BioSteel business unit; (iv) as a result, the Company's revenue was overstated; and (v) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### The Truth Fully Emerges

71.     On May 10, 2023, after the market closed, Canopy Growth filed a Form 8-K with the SEC announcing that certain previously issued financial statements should no longer be relied upon because it "identified certain trends in the booking of sales by the [BioSteel] business unit for further review." In greater part, the Company stated:

> In connection with the preparation of Canopy Growth Corporation's (the "Company") consolidated financial statements for the fiscal year ended March 31, 2023, *management of the Company identified certain trends in the booking of sales by the BioSteel Sports Nutrition Inc. ("BioSteel") business unit for further review*. The Company, together with independent external counsel and forensic accountants, and under the oversight of the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of the Company, initiated an internal review of the financial reporting matters related to BioSteel (the "BioSteel Review").
>
> Although the BioSteel Review remains ongoing, *the Company has preliminarily identified material misstatements in the Prior Financial Statements (as defined below) related to sales in the BioSteel business unit that were accounted for incorrectly*. In particular, on May 4, 2023, the Company, in consultation with the Audit Committee, concluded

that the Company's (i) audited consolidated financial statements for the fiscal year ended March 31, 2022, included in the Company's Annual Report on Form 10-K for the fiscal year ended March 31, 2022 (the "2022 10-K"), and (ii) unaudited consolidated financial statements for the quarterly periods ended June 30, 2022, September 30, 2022 and December 31, 2022, included in the Company's Quarterly Reports on Form 10-Q for such quarterly periods (collectively, the "Form 10-Qs" and together with the 2022 10K, the "Prior Financial Statements"), should no longer be relied upon because of certain material misstatements contained in the Prior Financial Statements. In addition, the reports of the Company's independent registered public accounting firm included in the 2022 10-K should no longer be relied upon.

***Based on the preliminary findings of the BioSteel Review to date, the Company currently anticipates that (i) the BioSteel Review generally will focus on the timing of revenue recognition in accordance with U.S. generally accepted accounting principles under Accounting Standards Codification ("ASC") 606 and (ii) the correction of the misstatements is expected to reduce certain revenues previously recognized and adjust related balance sheet items in the Prior Financial Statements***, including certain segment disclosures. The Company is unable to quantify the impact of the BioSteel Review and the related corrections to the Prior Financial Statements at this time because the BioSteel Review is ongoing. The Company cannot provide assurance that other errors will not be identified or impact additional prior accounting periods.

The Company has determined that it is appropriate to correct the misstatements by restating the Prior Financial Statements (the "Restated Financial Statements") and plans to file the Restated Financial Statements as soon as practicable. The Company does not expect to file its Annual Report on Form 10-K for the fiscal year ended March 31, 2023 (the "2023 10-K"), until the Restated Financial Statements are completed. The Company is working diligently to complete the BioSteel Review and the Restated Financial Statements, and expects to complete them as soon as practicable. At this time, however, the Company cannot predict with certainty when the BioSteel Review or such assessment work will be completed.

30

As a result of the preliminary findings of the ongoing BioSteel Review, including the discovery of misstatements, the Company is continuing to assess its disclosure controls and procedures and internal control over financial reporting. The Company expects to report one or more material weaknesses in internal control over financial reporting with respect to some or all impacted periods following completion of the review.

72.     On this news, Canopy Growth's stock price fell $0.18 per share, or 14.8%, to close at $1.04 per share on May 11, 2023, on unusually heavy trading volume.

## Post-Class Period Developments

73.     On May 12, 2023, *BNN Bloomberg* published an article, titled "Accounting errors, overspending lead Canopy Growth to sour on its $50M BioSteel investment", detailing how former BioSteel employees portrayed BioSteel as "a dysfunctional organization rife with overspending."   The article stated, in relevant part:

When Canopy Growth Corp. announced it took a controlling stake in a near-insolvent BioSteel Sports Nutrition Inc. nearly three years ago to help make a line of CBD-infused sports drinks, investors cheered the move, pushing its stock up as much as five per cent that day.

Now, that same investment has suddenly emerged as an albatross for the stumbling cannabis player, forcing Canopy to announce the embarrassing move of restating its financial statements for its 2022 fiscal year while *former employees paint a picture of a dysfunctional organization rife with overspending*.

* * *

In addition to that revelation that sent Canopy's stock plunging by more than 14 per cent on Thursday, *the company's once-lauded acquisition has been caught in a sweeping re-organization that's seen its co-*

*founder John Celenza ousted following a testy exchange with Canopy's Chief Executive Officer David Klein in March*, two people familiar with the situation told BNN Bloomberg.

* * *

*Sources who worked for BioSteel and its partners described the working environment at the company as chaotic and, at times, disorganized.* While the specific nature of the arguments between the executives is not fully known, *sources said BioSteel's spending plans often clashed with Canopy's need to rein in costs* within its struggling cannabis ventures.

While BioSteel's revenue has purportedly climbed 56 per cent in 2022 to $44.6 million, a rare bright spot in Canopy's floundering Canadian cannabis business, *those sales may have come at a steep cost with costly endorsement deals awarded to a slew of NHL, NFL, MLB, and NBA players, the source said. Industry sources suggested endorsement deals with well-known athletes could start at $100,000, while contracts with professional teams could often be at least triple that amount.*

A Canopy spokesperson declined to confirm whether Celenza was part of a recent wave of BioSteel departures *that saw about 20 staff leave the company*, citing a policy where they do not comment on individual departures. *Those staff cuts were tied to an announcement Canopy made in February that it would transition to an asset-light model* and close its Smiths Falls, Ont. headquarters. That announcement also reaffirmed management's expectations that those recent closures would result in positive adjusted EBITDA in its fiscal 2024, *with the noted exception of its BioSteel business*.

74.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Canopy Growth securities during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

76.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Canopy Growth's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Canopy Growth shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Canopy Growth or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

77.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

78.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

79.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Canopy Growth; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

80.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

81. The market for Canopy Growth's securities was open, well-developed, and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Canopy Growth's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Canopy Growth's securities relying upon the integrity of the market price of the Company's securities and market information relating to Canopy Growth, and have been damaged thereby.

82. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Canopy Growth's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Canopy Growth's business, operations, and prospects as alleged herein.

83. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the

Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Canopy Growth's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

84. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

85. During the Class Period, Plaintiff and the Class purchased Canopy Growth's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SCIENTER ALLEGATIONS

86.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Canopy Growth, their control over, and/or receipt and/or modification of Canopy Growth's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Canopy Growth, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

87.     The market for Canopy Growth's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Canopy Growth's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities

relying upon the integrity of the market price of Canopy Growth's securities and market information relating to Canopy Growth, and have been damaged thereby.

88.     During the Class Period, the artificial inflation of Canopy Growth's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Canopy Growth's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Canopy Growth and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

89.     At all relevant times, the market for Canopy Growth's securities was an efficient market for the following reasons, among others:

(a)     Canopy Growth's shares met the requirements for listing and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Canopy Growth filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Canopy Growth regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Canopy Growth was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

90.     As a result of the foregoing, the market for Canopy Growth's securities promptly digested current information regarding Canopy Growth from all publicly available sources and reflected such information in Canopy Growth's share price. Under these circumstances, all purchasers of Canopy Growth's securities during the

Class Period suffered similar injury through their purchase of Canopy Growth's securities at artificially inflated prices and a presumption of reliance applies.

91.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

92.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Canopy Growth who knew that the statement was false when made.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

93.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

94.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Canopy Growth's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each defendant, took the actions set forth herein.

95.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Canopy Growth's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

96.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce, and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Canopy Growth's financial well-being and prospects, as specified herein.

97.     Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Canopy Growth's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order

to make the statements made about Canopy Growth and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

98.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team, or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants were aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

99.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Canopy Growth's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

100.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Canopy Growth's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information

that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Canopy Growth's securities during the Class Period at artificially high prices and were damaged thereby.

101.   At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Canopy Growth was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Canopy Growth securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

102.   By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

103.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

104.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

105.   The Individual Defendants acted as controlling persons of Canopy Growth within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.   The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

106.   In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the

power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

107.   As set forth above, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.   Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.   Such other and further relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 21, 2023                  Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS